Thank you. May it please the court. My name is Eitan Casteljanich. I am representing Neona Modoc in this appeal. Modoc has been unable to work since September 2012 as a result of the combined functional effects of her many impairments, including obesity, diabetes with neuropathy, lumbar and thoracic degenerative disease, and depression. The main issue that I see in this case that requires remand is there are opinions from Mary Browning, who is Modoc's treating nurse practitioner, Dr. Salzberg, who is an examining physician, and Dr. May, an examining psychologist, and all of their opinions basically state that Modoc cannot work. She is disabled. And the ALJ did not state any legitimate reason for rejecting any of those opinions. In addition, because the issue here involves neuropathic pain from the diabetes, it's critical to look at the person's testimony about their pain and their symptoms, and the ALJ did not state any convincing reason for rejecting any of Ms. Modoc's testimony about the severe pain that she experiences that results in her having to use a walker, canes, wheelchair. ALJ also improperly rejected lay evidence from a social worker, Darla Johnson, and lay evidence from Modoc's mother. Didn't your client demonstrate daily life activities like cooking, cleaning, shopping for groceries, walking short distances for exercise, and traveling to, I think, to Denver to see her grandchildren? Is all of that correct? Yes, all of that is correct, but none of those activities contradict her testimony about her limitations, and none of those activities show that she would be able to perform any kind of work activity on a sustained basis. Very basic activities. Even traveling once, traveling by plane to visit a family member. Even disabled people travel to visit their family members, even if it hurts them to do so. You had mentioned Darla Johnson, and, of course, there was not really specific recitation about that evidence. On the other hand, the evidence from Darla Johnson, it seems to me, is incorporated elsewhere, and also folded into the RFC. So, is there specific evidence from her that you think was not reflected elsewhere in the record? Well, no, actually, there isn't. Her description of her observations is, in a sense, cumulative, in that the description from Dr. Salzberg, the best critical findings, are far more persuasive and far more significant than her lay observations. But the lay observations do confirm that with just one more set of eyes, seeing the problems that she was having. Thank you. Sorry, go ahead. I'd like to ask a question. Did the ALJ compare notes, opinions, and complaints from different time periods, sometimes even years apart, I sort of got the sense that you were arguing that these were inconsistencies that weren't really fairly attributed because of the different time periods involved. Is that part of your argument? Yes, it is. Now, some of the comparisons, I think, may have been, to a certain extent, post hoc comparisons. But the issue, of course, is if a person goes to a hearing three years after they complete a questionnaire, and when they go to that hearing, they're not exactly the same as they were three years earlier, that's not a reason to reject either of the statements. It just shows they've gotten worse. But yes, I think it is unfair to reject a disability claimant's hearing testimony based on the fact that she's gotten worse over a three-year time span. What weight was the ALJ required to give to the nurse practitioner, Browning? Well, under the law at that time, under Social Security ruling 06-03P, the ALJ was required to consider this evidence, but there's no strict rule as far as what level of weight to give it. But that ruling also says that sometimes the opinion of what was then called an other medical source or a medical source who is not an acceptable medical source, sometimes those opinions could merit, could deserve more weight than even the opinion of an acceptable medical source. And this is such a case because this is not a person, not a nurse practitioner who just saw MODOC once. This is a treating nurse practitioner, a primary care treatment provider who had a longitudinal knowledge of her condition. So I think that in this case, it's entitled to the highest weight. Didn't the nurse practitioner's own notes suggest that she had observed a normal gait and motor strength on behalf of your client? Positive responses about functioning with pain management and success in weight loss? Her condition did vary over time, and a treatment provider such as Ms. Browning is going to report how she's doing at any given time. But over the entire overall time period, her condition obviously worsened over time. I should mention that in district court and then in this court as well, I am not seeking the award of benefits because I felt that there was some lack of clarity as far as exactly when is the correct date here. There was also an issue involving reopening that was not all that clear and that I don't think that this court is really well suited to decide about. But overall, I think the evidence supports the award of benefits because she's been disabled this entire time. There's never been a time period where she has gotten well enough, long enough to be able to do anything. But Judge Hawkins, you're correct that there are times where she reported that there was some improvement. Did you want to save any time for rebuttal, Mr. Janich? Yes, please. Thank you. You're welcome. We'll hear from the commissioner. Thank you, Your Honors. Good morning. Good morning, Mr. Janich. Joseph Blankhammer on behalf of the commissioner. Ms. Modoc invites this court to do what the substantial evidence standard prohibits, which is to reweigh nearly all of the ALJ's factual findings and displace them with her own interpretation of the record. This court should affirm the ALJ's decision because substantial evidence supports it. For example, one doctor who examined Modoc concluded that her self-reports were unreliable. She found no plausible explanation for her deterioration in functioning. Multiple exams demonstrated that she had full motor strength. As Judge Hawkins pointed out, Modoc also engaged in a number of activities that stood at odds with her allegations of disability, including beyond just normal activities like cooking, cleaning, things like that, but also riding a four-wheeler at one point. How is that really fair? People do dumb things sometimes, and she gets on a quad. I can see maybe there's some pressure she gets on it. It's a dumb thing to do, but to use that seems unfair because there are also going to be instances, I'm sure, that we're not always aware of where she's just ill for one day, perhaps at a peak period of time. So I guess I just don't like that sort of argument. She did one thing, therefore we sort of one dumb thing, so we sort of wipe out this sort of history. I guess more fundamentally, and this is a hard question, when I read this, I think that I could argue it either way sometimes. I could argue perhaps equally forcefully for the other side, and that gives me pause to wonder if just conceptually this case is difficult because there's a lot to absorb, and a lot of components of it are inherently perhaps subjective. Lots of different doctors, and when you start picking and choosing, you can kind of do whatever you want. And just as a methodology, it bothers me. So I'd like to hear your comments on that. Sure, Your Honor. There's no question that there is conflicting evidence in this case, as you point out, Judge Ferguson. This really ties into this court's standard of review. There are competing interpretations. Certainly there are treatment notes that show that she is experiencing difficulties at times. Other treatment notes show that she's able to indicate that she's able to function better than she's alleging. And in these types of cases where we have conflicting evidence on both sides, it underscores the importance of the standard of review. In cases like Consolo, in cases like Ford, this is from the Ninth Circuit, Birch from the Ninth Circuit, they all stand for the proposition that when we have conflicting evidence like this, so long as the ALJ's interpretation is reasonable, then the court should affirm, even if there is a competing rational interpretation on the other side. For example, the Supreme Court in Consolo years ago pointed out that the mere fact of drawing two inconsistent conclusions from the evidence does not preclude affirming the decision under the substantial evidence standard. So you're right, Judge Ferguson, there is competing evidence on both sides. But what we need to look at is what did the ALJ do with that competing evidence, and did more than a mere scintilla, that's what the Supreme Court just recently said in BSTEC, did more than a mere scintilla of evidence support the ALJ's factual findings? And what we have here, Ms. Modock is arguing, advocating that the ALJ should have given more weight to certain medical opinions. But what Ms. Modock doesn't point out to the court is that there were multiple medical opinions that the ALJ did give weight to, and that supported the ALJ's findings. For example, Todd Bowerly, Ph.D., the ALJ gave some weight to that doctor's opinion. This doctor examined Modock and concluded that mentally she was able to function. Dr. Leinenbach, another consultative examiner, looked at Modock, and despite finding some reaching and feeling limitations that the ALJ did not assign weight to, in general, Dr. Leinenbach found that Modock could function a lot better than she claimed. In 2015, Dr. Leinenbach said that she could stand for up to four hours a day, sit with no problems. We also have two doctors from the state agency who examined or who reviewed records from Modock's medical treatment, and they found that despite some concentration issues, she could do simple routine work with some complex tasks, in fact. So this is not as one-sided as Ms. Modock argues. We have competing evidence on both sides. The ALJ made rational, factual findings to resolve those conflicts, and ultimately, important to note, the ALJ imposed some serious limitations in Modock's resignation. What were the ALJ's reasons for rejecting petitioner's testimony about the severity of her symptoms? So the ALJ gave several reasons. Number one, the ALJ pointed to medical opinions, including Dr. Leinenbach and Dr. Bowerly. This is on pages 22 and 24 of the ALJ's decision, where the ALJ noted that Dr. Leinenbach concluded that Modock was more functional than she alleged. Similarly, Dr. Bowerly found that she was more functional than she alleged, and it makes the case a lot like this court's Carmichael decision, where what this court upheld the ALJ's finding, that when a medical opinion about a person's specific functional limitations stand at odds with that person's testimony, that's a valid basis for discounting it. The ALJ also looked at the underlying treatment records, in addition to those doctors' opinions, looked at the underlying treatment records over the years, and pointed out that the records did not reflect the level of complaints that Ms. Modock made to the ALJ. For example, Ms. Modock said that she could only stand or walk for a couple of minutes, that she had problems sitting for lengthy periods. Yet, in July 2013, for example, Nurse Browning stated that treatment was helping Modock be active. October 2014, Nurse Browning said that Modock's neuropathy was, quote, doing well on medication. That's at page 640. About a year later, in June 2015, Nurse Browning noted that Modock declined an MRI, wasn't interested in cortisone injections, and she was feeling better on insulin. That's on page 844. That spring, in April 2016, she said that her pain was well-controlled, and that she was actually eating a lot better. So the ALJ looked at these medical records, and under cases like PARA, under cases like Carmichael, the inconsistency between subjective complaints and the medical evidence is a valid basis to discount it. And then as a third reason, the ALJ also relied on these activities. And, Judge Pregerson, I understand your point that, you know, the Ninth Circuit has stated that there's no basis to penalize a person for doing some activities and trying to lead a normal life. But this was another aspect of the ALJ's decision that, while maybe not determinative here, while sufficient in and of itself to discount subjective complaints wholly, when paired with medical opinions, when paired with the medical evidence, underlie and support the ALJ's ultimate finding that Ms. Modock's subjective complaints just did not line up with the overall record. And another question, if you look at the reply brief, there's a lot of emphasis there on the contemporaneous evidence of daily activities and also medical opinions and records at that point. And that is another example where the ALJ didn't seem to really point to the evidence. And I think that that's already been pointed out in a different context by Mr. Janich earlier. But what do you make of that important time, I think, where we really don't have any judgment by the ALJ? Well, you know, it's an interesting argument, Your Honor, because in some ways it undermines Ms. Modock's claim that she is disabled during the relevant period. If she's saying on the one hand, you know, I can't get out of bed, this is what, you know, things that she told the ALJ, I can only stand and walk for limited periods, but then she's suggesting that she's not that limited on other occasions. In fact, it weakens, you know, her overall argument that she was so limited during the relevant period. And the relevant period is important here, Your Honor, because the ALJ is charged with looking at her found that, you know, her alleged onset date here was May of 2012. And then through the date of the ALJ's decision, which is 2017, that was the period the ALJ was looking at. The ALJ looked at the treatment records over that timeframe. Was the ALJ required to find a, you know, a treatment record on the exact day that she said something else to another provider? No, there's no such requirement. The ALJ took a look at these treatment records over a period of time, looked at what Ms. Modock said to him during the hearing and submitted to the agency, and then made comparisons. And when we look at the ALJ's decision on a whole while, it's true that the ALJ didn't say on this date, you know, she said this even though on that exact date she was doing this. It was still reasonable for the ALJ to look at those activities, at those medical findings over the relevant timeframe in this case, and then make rational factual findings from that. There was one question from Judge Hawkins that I wanted to address briefly. Judge Hawkins, you asked what is the standard for, I believe, what was the standard for evaluating an other source opinion like Nurse Browning. The standard is germane reasons. The ALJ isn't required to give any weight to, is required to consider, obviously, that opinion, but isn't required to give any weight to it as long as there are germane reasons to discount it. And this court's Molina decision, as well as Bayless, the Bayless case is on point where this court has stated that an ALJ may reject another source opinion, like Ms. Browning's, when the treatment records, including her own notes in this case, undermine her ultimate opinion about the person's limitations. And I see that my time is up. So if your honors have no further questions, the commissioner requests the court to affirm the ALJ's decision. Thank you. Mr. Ganich. First, I wanted to address the standard of review for Ms. Browning's opinion. The entire line of decisions, it talks about germane reasons for lay evidence. It was treating lay evidence the same if it was lay evidence from a relative and lay evidence that was from a treating nurse practitioner. And Social Security ruling 0603P was designed in part to address that issue, that if a person is a treating nurse practitioner, surely their opinion, I mean, once again, it says, it can carry more weight than an acceptable medical source opinion. Also, the regulations have since been amended where nurse Browning would be considered an acceptable medical source. But setting that aside, what I wanted to point to, I guess, is the ALJ's reasons for rejecting MODOC's testimony. I address every single one of the ALJ's reasons in my briefs. And none of his reasons rise anywhere close to the level of being convincing reasons to reject anything she was describing about her actual symptoms. I urge the court to reread the findings from Dr. Salzberg and the findings from Dr. Landenbach. Dr. Salzberg had a very strong opinion about how limited MODOC is. Dr. Landenbach's opinion was not as strong. But his findings, actually, if you read them carefully, they show a person who really couldn't be on her feet, who was having a lot of problems with severe pain. And so, in any case where it boils down to pain, you've got to look at what the claimant has to say and their description of what it is they're experiencing, what their doctors have observed, what lay witnesses have observed. And all of this is consistent. And it consistently shows that throughout the time frame here, MODOC has had severe symptoms that have prevented her from performing any substantial gainful activity on a sustained basis. If the court doesn't have any other questions, I ask you to reverse the ALJ's decision and remand this case for a new hearing. I'd like to thank you both for your arguments this morning, and the case of MODOC v. Saul is now submitted. Our next case for argument will be United States v. Lazarus Chacon.
judges: Hawkins, McKeown, Pregerson